1

The Honorable James L. Robart

2

3

4

5

6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

| | |
|---|---|
| Maria Mora-Villalpando,<br><br>        Plaintiff,<br><br>   v.<br><br>U.S. Immigration and Customs Enforcement,<br>U.S. Customs and Border Protection, et al.,<br><br>       Defendants. | No. C18-655-JLR<br><br>Plaintiff's Cross Motion for<br>Summary Judgement<br><br>Note on Motion Calendar: March 15, 2019 |

9

10

11

12

13

14

15

    Plaintiff, Maria "Maru" Mora-Villalpando, hereby respectfully submits her cross-

16

motion for summary judgement and opposition to Defendants' motion for summary judgment

17

in this case brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and in

18

support states as follows:

19

## I.  INTRODUCTION

20

    U.S. Immigration and Customs Enforcement (ICE) placed Ms. Mora-Villalpando

21

("Plaintiff"), an outspoken immigrant rights activist, in removal proceedings in late 2017. She

22

later learned that her I-213, an official ICE document which sets forth the basis to support a

23

person's alleged alienage and removability, stated that she has "extensive involvement with anti-

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1   ICE protest and Latino advocacy programs" and that she "has become a public figure." First

2   Amended Complaint (Dkt. # 16) at ¶ 5.

3       Spurred by this discovery, Plaintiff filed a FOIA Request in February 2018 against ICE,

4   seeking information about the agency's targeting of her and other immigrant rights activists. Her

5   FOIA request consists of three parts. The first part sought documents related to her own case

6   ("First Request"). *Id.* at ¶ 43. The second part sought information related to ICE enforcement

7   operations against other activists and individuals who speak out to the media ("Second

8   Request"). *Id.* at ¶ 44. The third part sought form I-213s pertaining to other activists and

9   individuals who speak out to the media ("Third Request"). *Id.* at ¶ 45.

10      ICE did not respond to her request in time and she subsequently filed this lawsuit. ICE's

11  initial search immediately following this suit was limited only to records regarding her own case,

12  i.e., records responsive to the First Request. *Id.* at ¶ 57. This has been a key issue from the outset

13  of this litigation. *Id.* at ¶ 58.

14      After months of litigation and hundreds of released pages pertaining to Plaintiff's

15  individual case, ICE – for the first time – admitted in its declaration that it *never* performed a

16  search responsive to the Third Request. *See* Declaration of Toni Fuentes ("Fuentes Decl.") (Dkt.

17  # 36) at ¶ 34. ICE also never conducted a search responsive to the Second Request in the

18  databases where responsive information is most likely to be found.

19      Plaintiff's Motion for Summary Judgment should be granted and ICE's should be denied.

20  As explained below, ICE has failed to meet its burden that it conducted a search reasonably

21  calculated to uncover responsive records. The records sought by the Second and Third Requests

22  are most likely to be found in the databases of the Office of Enforcement and Removal

23  Operations (ERO). Apart from the ERO Policy Library, ICE's declaration demonstrates that it

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

never searched those databases for anything other than documents specific to Plaintiff's removal

case, i.e. documents that could be responsive to the First Request. ICE's decision not to perform

these searches is unreasonable and a violation of FOIA. In two sentences that lack detail and are

conclusory, ICE's declaration claims that it could not perform those searches because of the

Privacy Act of 1974 and because it "does not specifically track" the information sought in the

Second and Third Requests. ICE's reliance on the Privacy Act (5 U.S.C. § 552a) is wrong as a

matter of law and is in violation of FOIA. ICE's claim that it did not do the search because it

does not specifically track the requested information is unreasonable because it is contradicted

by the declaration itself, case law, and information made publicly available by DHS.  Finally,

ICE's search was also inadequate because a number of the searches it *did* conduct were

unreasonably limited with respect to the search terms used and the databases searched.

## II. FACTUAL BACKGROUND

### A.  FOIA Request and Litigation

On February 23, 2018, Plaintiff submitted a multi-agency FOIA request to Defendants

containing three subparts. *See* First Amended Complaint at ¶ 7. The first subpart of the FOIA

request ("First Request") sought the following documents:

> 1.  "Any and all records of communication within federal agencies or between
> federal, state, and/or local agencies relating to enforcement operations,
> investigations, intelligence gathering, surveillance, and/or issuance of a Notice
> to Appear against or relating to any of the SORs,[1] including, but not limited to
> Field Operations Worksheets, significant incident reports, intelligence reports,
> Forms I-203, and records within all DHS databases, including but not limited to
> the Deportable Alien Control System (DACS), Enforcement Integrated Database
> (EID), ENFORCE Alien Removal Module (EARM), and/or HSI databases such
> as the Significant Event Notification system (SEN), Investigative Case
> Management system (ICM), FALCON-SA, electronic records in the Enterprise
> Document Management System or the Electronic Immigration System, FBI

---

[1]        Subjects of Record (SORs) refers to Ms. Mora-Villalpando, NWDC Resistance, and Latino Advocacy.

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

records, DOJ, criminal records, national intelligence records, NVC records, DOS records, Coversheets and Worksheets (including CARRP, TRIG, FDNS, and others), and all other records on behalf of, by, for, or otherwise referencing the SORs.

2.  Copy of all records referencing and related to each of the SORs.

3.  Copy of entire Alien records (A-Files), Petitioner records, Beneficiary records, Temporary Files (T-Files), Receipt Files (R-Files), Work Files (W-Files).

4.  Copy of records relating to the SOR's connected in any way to any apprehension of the SOR's by CBP or ICE or the FBI, detention of the SOR's by CBP or ICE or the FBI, expedited removal of the SOR's by CBP or ICE, records regarding inspection or examination of the SOR's upon arrival at a U.S. port of entry, and/or any records relating to any voluntary returns the SOR's by CBP.

5.  Copy of all notes and memos and post-it notes, whether handwritten or electronic; emails, whether archived or stored in inboxes, junk folders, locally, remote, subfolders, or other storage locations; and all other written information and records regarding each of the SOR's.

6.  Copy of all FDNS-DB records, FDNS records, JTTF records, TECS records, OBIM records, FDNS-DS records, ATLAS records and results, SGNs, manual referral records, fraud tip referral records, FISAR reports, ASVVP records, CLAIMS and CLAIMS 3 records, BCS records, MFAS records, SER ADJ records, FIRS records, biometrics records, iDSM records, FACE records, ITL records, NCIC records, NDIS records, N-DEx records, LEO records, Guardian and e-Guardian records, No Fly records, TSC records, TRIP records, Consular Consolidated Database records, CI/HUMINT records, and all other electronic and paper information regarding each of the SOR's.

7.  All Customer Relationship Management (CRM) and Customer Management Information System (CMIS) and similar records, including but not limited to the National Customer Service Center (NCSC) and local USCIS offices, InfoPass records, FBI Call Centers and Offices (local or international), CBP Call Centers including Headquarters and Office Call Centers, and other points of contact, regarding or by each of the SOR's.

8.  All address records including but not limited to the Customer Relationship Interface Systems' (CRIS) Change of Address (CoA) component, AR-11's, AccurInt, and other record systems for any of each of the SOR's.

9.  All other records and references to any SOR, including references to other agencies holding or withholding information about each of the SOR's."

National Immigration Project
Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1   *Id.* at ¶ 43. The second subpart of the FOIA request ("Second Request") sought the following

2   documents:

3           "Any and all records containing, describing, relating, or referring to guidance,
            guidelines, rules, policies, procedures, emails, trainings, press releases, public

4           statements, summaries, post-investigation reports and any other instructions or
            directives, past or present, regarding enforcement operations undertaken against

5           individuals who:

6               1.  provide a public statement or statements to the media regarding their
                    immigration status;

7               2.  provide a public statement or statements to the media regarding
                    immigration enforcement of family members;

8               3.  are involved in 'anti-ICE protests' and/or 'immigrant rights' activism;
                4.  are involved in 'Latino advocacy programs,' 'immigration advocacy,'

9                   'activism,' and/or 'organizing.'"

10  *Id.* at ¶ 44. The third and final subpart of the FOIA request ("Third Request") sought the

11  following documents:

12          "Copies of any I-213s, **with identifying information redacted**, where ICE has
                initiated enforcement action against an individual due to:

13              1.  the individual's public statement or statements to the media regarding
                    their immigration status;

14              2.  the individual's involvement in 'anti-ICE protests;' and/or 'immigrant
                    rights' activism; and/or

15              3.  the individual's involvement in 'Latino advocacy programs,'
                    'immigration advocacy,' 'activism,' and/or 'organizing.'"

16

17  *Id.* at ¶ 45 (emphasis added).

18          Although ICE acknowledged receipt of the FOIA request, it did not respond to the

19  request before Plaintiff filed the initial complaint in this litigation.[2] *Id.* at ¶55. On May 30, 2018,

20  ICE produced a five-page response to the FOIA request—26 days after the filing of this suit and

21  68 working days after it received the request. *Id.* at ¶ 57. Further, in its cover letter, ICE

22

23  _____
    [2] In April 26, 2018, prior to this lawsuit, ICE acting on referral from a request to USCIS produced certain
    documents from Plaintiff's A-File. ICE, however, did not respond to the FOIA request directed to it prior
    to the initiation of this lawsuit. *See* First Amended Complaint at ¶55.

    Plaintiff's Cross Motion for Summary Judgement– 5
    No. C18-655-JLR

    National Immigration Project
    Of the National Lawyers Guild
    89 South St., Suite 603,
    Boston, MA 02111

1    mischaracterized Plaintiff's request, stating that it was merely responding to a request for "ALL

2    RECORDS PERTAINING TO MARU/MARIA MORA VILLALPANDO, DOB: XX/XX/1970,

3    COB: MEXICO, A-2xx-xxx-xxx." *Id*. ICE's response did not raise any Privacy Act concerns,

4    nor did it refer to the Second or Third Requests. *See* Fuentes Decl., at Ex. 2.

5         Rather than promptly remedying its violations of the FOIA, on June 21, 2018, ICE filed

6    a legally meritless Motion to Strike allegations from Plaintiff's complaint. *See* Defendant's

7    Motion to Strike (Dkt. # 20). This court denied the motion to strike on July 23, 2018. *See* Order

8    denying Defendants' Motion to Strike (Dkt. # 26).

9         Pursuant to this Court's order directing the parties to confer and propose specific

10   deadlines to resolve the case, the parties agreed that ICE would produce any additional

11   responsive documents by September 21, 2018 and prepare a Vaughn index and serve it on

12   Plaintiff by October 22, 2018. *See* Stipulation and Order for Deadlines (Dkt. #31). Accordingly,

13   ICE released supplemental disclosures consisting of 339 pages on September 21, 2018 and an

14   additional 321 pages on October 4, 2018. *See* Feuntes Decl. at ¶¶ 23-24. On November 5, 2018,

15   ICE produced a final Vaughn Index describing the FOIA exemptions.

16

17   **B.  Searches Conducted by ICE**

18        According to Defendant's declaration, ICE's FOIA office initially requested the Office

19   of Enforcement and Removal Operations (ERO) to conduct one general search. *Id.* at ¶ 32. The

20   request was submitted to ERO's Information Disclosure Unit (IDU). *Id.* Following this

21   litigation, ICE's FOIA office also tasked various sub-agencies to conduct several additional

22   searches. The following is a summary of all searches described in ICE's declaration:

23

Plaintiff's Cross Motion for Summary Judgement– 6
No. C18-655-JLR

1            *1.  ERO IDU Search ("Search No. 1")*

2       Initially, ERO IDU conducted "a search for all records pertaining to the Plaintiff." The

3 search used the Plaintiff's first name, last name, alien number (A-number), country of birth and

4 date of birth." *Id.* at ¶ 33. ERO IDU searched four databases: Enforcement Integrated Database

5 (EID), EID Arrest Guide for Law Enforcement (EAGLE), the Immigration and Enforcement

6 Operational Records System's (ENFORCE) Alien Removal Module (EARM), and the Central

7 Index System (CIS). *Id.*

8       ERO IDU explicitly did not conduct a search with respect to the Second and Third

9 Requests.  The declaration states that generally ICE cannot perform these searches because

10 "[t]he Plaintiff did not provide any privacy waivers to obtain third party information which

11 would allow ICE to search for and provide such records" and because "ICE does not

12 specifically track the information requested in sections two and three of the Plaintiff's FOIA."

13 *Id.* at ¶ 34.

14       After the initiation of this litigation, ERO IDU tasked only two of its components to

15 conduct additional searches: the ERO Seattle Field Office and ERO Policy. *Id.* at ¶ 35.

16

17            *2.  ERO Seattle Field Office Search ("Search No. 2")*

18       Following this litigation, ERO IDU directed the Deputy Field Office Director (DFOD)

19 of the Seattle ERO Field Office to search for responsive records. *Id.* at ¶ 37. The DFOD

20 searched only his computer and his own Microsoft Outlook account. *Id.* He conducted a search

21 focused on the subjects referred to in the First Request "using terms such as 'Maru Mora

22 Villalpando,' 'Maria Mora Villalpando,' 'Villalpando,' 'Maru Mora,' 'Northwest Detention

23 Center Resistance,' 'Latino Advocacy,' as well as 'NWDC Resistance.'" *Id.*

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1

2            *3. ERO Policy Search ("Search No. 3")*

3       Following this litigation, ERO IDU directed ERO Policy to search for responsive

4 records. *Id.* at ¶36. A Detention and Deportation Officer (DDO) performed the search in the

5 ERO Policy Library and "[t]he search was conducted using such search terms as: 'Enforcement

6 Action', 'Activism', 'Immigration Advocacy', as well as 'Immigration Rights Activists.'" *Id.*

7

8            *4. HSI Search ("Search No. 4")*

9       Following this litigation, ICE directed Homeland Securities Investigations (HSI) to

10 search for responsive records. *Id.* at ¶ 39. HSI tasked a Mission Support Specialist (MSS) to

11 conduct the search. The MSS searched HSI's Investigative Case Management System (ICM)

12 "using such search terms as: 'Maria Mora Villalpando,' 'Maru Mora Villalpando,' 'Northwest

13 Detention Center Resistance,' 'NWDC Resistance,' 'Latino Advocacy,' 'Enforcement Action,'

14 'Activism,' 'Immigration Advocacy,' 'Immigration Rights Activists,' as well as the Plaintiff's

15 name, date of birth and A-number." *Id.* at ¶ 40.

16

17            *5. OPLA Search ("Search No. 5")*

18       Following this litigation, ICE directed the Office of the Principal Legal Advisor

19 (OPLA) to search for responsive records. *Id.* at ¶ 41. OPLA tasked its Deputy Chief of

20 Knowledge and Management Division (KMD) to conduct the search. *Id.* The Deputy Chief

21 searched Microsoft Outlook, the Prinicipal Legal Advisor's Network (PLAnet) and Sharepoint

22 databases "using such search terms as: 'Maria Mora Villalpando,' and 'Villalpando.'" *Id.* at ¶

23 42.

Plaintiff's Cross Motion for Summary Judgement– 8
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1

### 6.   ICE Policy Search ("Search No. 6")

2        Following this litigation, ICE directed ICE Policy to search for responsive records. *Id.*

3   at ¶ 44. ICE Policy tasked a Management and Program Analyst (MPA) to conduct the search.

4   *Id.* The MPA searched Policy Sharepoint, Shared Drive, Microsoft Outlook, and the Internal

5   ICE Policy Manual "using such search terms as: 'media,' 'family,' 'protest,' 'activism,'

6   'advocacy,' 'Latino,' 'immigration status,' and 'press." *Id.* at ¶ 45

7

8

### 7.   Office of Public Affairs ("Search No. 7")

9        Following this litigation, ICE directed the Office of Public Affairs (OPA) to search for

10  responsive records. *Id.* at ¶ 47. OPA tasked the Division Chief of Mission Support (DCMM) to

11  conduct the search. *Id.* The DCMM searched her computer, her Microsoft Outlook account,

12  OPA's shared drive and requested 27 employees in OPA to conduct searches of their computers

13  and Microsoft Outlook accounts. *Id.* The DCMMs search was done "using such search terms

14  as: 'Mora Villalpando,' 'Latino Activist,' 'activist,' 'immigration advocacy,' 'activism,'

15  'advocate,' and 'Villalpando.'" *Id.* at ¶ 48.

16

17                          **III.     Legal Standard**

18        Summary judgment is appropriate when there is no genuine issue as to the material facts,

19  and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P.

20  56. FOIA lawsuits are generally resolved on cross-motions for summary judgment. *See Nat'l Res.*

21  *Def. Council v. United States DOD*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005)

22        Because there are rarely disputed issues of fact in FOIA cases, courts in this Circuit rely

23  on a two-step inquiry when engaging in a summary judgment FOIA analysis. *See Minier v. CIA,*

Plaintiff's Cross Motion for Summary Judgement– 9
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1  88 F.3d 796, 800 (9th Cir. 1996); *Shannahan v. IRS*, 637 F. Supp. 2d 902, 912 (W.D. Wash.

2  2009).

3      First, courts must "determine whether the agency has met its burden of proving that it

4  fully discharged its obligations under FOIA." *Los Angeles Times Commc'ns, LLC v. Dep't of*

5  *Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006) (citing *Zemansky v. EPA*, 767 F.2d 569, 571

6  (9th Cir. 1985)). To do so, "an agency must show beyond a material doubt, and viewing the facts

7  in light most favorable to the requester, that it has conducted a search reasonably calculated to

8  uncover all relevant documents." *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. United*

9  *States Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (quoting *Weisberg v.*

10  *United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). *See also Albers v.*

11  *FBI*, Case No. 16-05249-BHS, 2017 U.S. Dist. LEXIS 26348, at *8 (W.D. Wash. Feb. 24, 2017).

12      The adequacy of the agency's search "is judged by a standard of reasonableness and

13  depends, not surprisingly, upon the facts of each case." *Zemansky,* 767 F.2d, at 571 (quoting

14  *Weisberg,* 745 F.2d, at 1485). Affidavits describing an agency's search are "sufficient for

15  purposes of summary judgment only if they are relatively detailed in their description of the

16  files searched and the search procedures, and if they are nonconclusory and not impugned by

17  evidence of bad faith." *Id*. at 573 (quotation omitted).

18      Second, once the agency meets its burden regarding the adequacy of the search, courts

19  look to "whether the agency has proven that the information that it did not disclose falls within

20  one of the nine FOIA exemptions." *Shannahan v. IRS*, 637 F. Supp. 2d 902, 912 (W.D. Wash.

21  2009) (quotation omitted).

22      Finally, as a general matter, this Circuit has recognized that federal agencies have a duty

23  to interpret FOIA requests liberally in favor of disclosure. *See*, *e.g.*, *Yagman v. Pompeo*, 868

Plaintiff's Cross Motion for Summary Judgement– 10
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1   F.3d 1075, 1080 (9th Cir. 2017) ("[W]e are persuaded that a duty of liberal construction

2   accords with the basic purpose of FOIA to ensure an informed citizenry, vital to the functioning

3   of a democratic society, needed to check against corruption and to hold the governors

4   accountable to the governed.") (quotation omitted); *Lawyers' Comm. for Civil Rights of S.F.*

5   *Bay Area v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) ("An agency

6   has a duty to construe a FOIA request liberally.").

7

8                                    **IV.    ARGUMENT**

9          ICE has not met its burden of showing "beyond a material doubt" that it conducted a

10   search "reasonably calculated to uncover all relevant documents" because it did not perform *any*

11   search whatsoever responsive to the Third Request and because it did not perform any search

12   responsive to the Second Request in relevant ERO databases. ICE admits in its declaration that it

13   never performed these searches. *See* Fuentes Decl. at ¶ 34. ICE's decision to not conduct these

14   searches is a violation of FOIA and is patently unreasonable because (1) it is premised on an

15   incorrect application of both FOIA (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a); and

16   (2) ICE's view that it cannot perform the searches because "it does not specifically track the

17   information requested in sections two and three of the Plaintiff's FOIA Request" is contradicted

18   by the declaration itself, case law, and information made publicly available by DHS. In justifying

19   its lack of search, ICE's declaration relies on three sentences that are conclusory, completely

20   lacking in any detail, and wrong as a matter of law.

21          Finally, ICE's search was also inadequate because a number of the searches it *did*

22   conduct were unreasonably limited with respect to the search terms used and the databases

23   searched.

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

**A. ICE's Search is Inadequate Because it Did Not Perform Searches Responsive to the Second and Third Requests Within Relevant ERO Databases**

ICE's search is inadequate because it was not "reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571 (9th Cir. 1985). A FOIA search is inadequate if the agency does not search offices or databases that are likely to possess the requested documents. *See, e.g.*, *Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Mgmt.*, 180 F.3d 321, 323 (D.C. Cir. 1999) ("The agency cannot limit its search to only one or more places if there are additional sources that are likely to turn up the information requested"); *Nat'l Res. Def. Council v. U.S. Dep't of Def., 388 F. Supp. 2d. 1086, 1100-1101* (C.D. Cal. 2005) (Finding that an agency's search was inadequate because it failed to search a sub-agency that likely had responsive documents).

The documents sought by the Second and Third Requests are most likely to be found in ICE's ERO databases. ICE did not perform searches responsive to the Second Request within ERO databases, other than in the ERO Policy Library, and it did not perform any searches responsive to the Third Request in any database.

> *1. The records sought by the Second and Third Requests are most likely to be found in EROs databases*

The information sought by the Third Request is most likely contained within the databases of the ERO. The Third Request seeks "copies of any I-213s, with identifying information redacted where ICE has initiated enforcement action against an individual" who is involved in activism or makes public statements to the media. First Amended Complaint at ¶ 45.

Plaintiff's Cross Motion for Summary Judgement– 12
No. C18-655-JLR

National Immigration Project
Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1    According to DHS' own publications, the agency records I-213s within at least two ERO

2    databases, the Enforcement Integrated Database (EID) and EID Arrest Graphical User Interface

3    for Law Enforcement (EAGLE). *See* Bryan Baker, Annual Report, Office of Immigration

4    Statistics, *Immigration Enforcement Actions: 2016* (December 2017),

5    https://www.dhs.gov/sites/default /files/publications/ Enforcement _Actions_2016.pdf.

6    ("Apprehension and inadmissibility data are collected in the Enforcement Integrated Database

7    (EID) using Form I-213, Record of Removable-Inadmissible Alien, and EID Arrest Graphical

8    User Interface for Law Enforcement (EAGLE)").

9    Similarly, the documents sought in the Second Request are also most likely to be found in

10   the unsearched ERO databases. The Second Request seeks a variety of records "regarding

11   enforcement operations undertaken against individuals" who are involved in immigrant rights

12   activism or who provide public statements to the media regarding their or their family member's

13   immigration status. First Amended Complaint at ¶ 44. Because ERO "manages all aspects of the

14   immigration enforcement process, including identification and arrest, domestic transportation,

15   detention, bond management, and supervised release," ERO databases are likely where records

16   responsive to the Second Request are stored. Fuentes Decl. at ¶ 27.

17   Further, many of the records sought in the Second Request will not be located in the ERO

18   Policy Library because that request is not limited to records related to policies and guidelines.

19   For example, it also seeks "procedures, emails, trainings, press releases, public statements,

20   summaries, [and] post-investigation reports…regarding enforcement operations undertaken

21   against" activists. First Amended Complaint at ¶ 44. This information is most likely to be found

22   within ERO databases outside of the ERO Policy Library.

23

Plaintiff's Cross Motion for Summary Judgement– 13
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

2.  *ICE did not conduct a search responsive to the Second and Third Requests within relevant ERO databases*

ICE's search is inadequate because it did not search ERO databases, or any other databases, for documents responsive to the Third Request.  Similarly, ICE did not search ERO databases for documents responsive to the Second Request, other than the ERO Policy Library database.

ICE performed three searches of ERO databases: Search No. 1, Search No. 2 and Search No.  3. In Search No. 1, the most expansive search of ERO databases including EID and EAGLE, ICE only conducted a search responsive to the First Request. Fuentes Decl. at ¶ 34 ("Although the second and third sections of the Plaintiff's FOIA request sought documents other than those that pertained to the Plaintiff, a search for records *only* pertaining to the Plaintiff was performed.") (emphasis added). In Search No. 2, ICE searched one computer and one Microsoft Outlook account within a single ERO field office using search terms identified only in the First Request. *Id.* Search No. 2 thus was not responsive to the Second and Third Requests and was limited to one of ERO's 24 field offices. *See* Contacting Field Offices, *available at* https://www.ice.gov/contact/ero (last accessed 02/01/2019). Finally, in Search No. 3, ICE searched only one database, the ERO Policy Library using policy-related search terms for records that could be responsive to the Second Request. *Id* at ¶ 36. Accordingly, Search No. 3 was not responsive to the Third Request, a request for I-213s, and it did not involve any ERO database other than the ERO Policy Library. ICE did not conduct any other searches within other ERO databases.

//

//

Plaintiff's Cross Motion for Summary Judgement– 14
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1    In sum, ICE's search was inadequate because it did not perform any searches responsive

2    to the Second and Third Requests within relevant ERO databases, even though these databases

3    are where the sought records are most likely to be found. *See Zemansky*, 767 F.2d at 571. Had

4    ICE conducted those searches, the agency would have likely found responsive records related to

5    enforcement actions against activists including those referenced in Plaintiff's complaint. *See*

6    First Amended Complaint, at ¶ 18. Plaintiff attaches one such record, an I-213 that references an

7    individual's membership in an "immigrant advocacy" group, as Exhibit 1.

8

9    **B.  ICEs Decision to Not Perform the Searches is Unreasonable and a Violation of FOIA**

10

11    ICE's refusal to perform Second Request searches within relevant ERO databases (other

12    than the ERO Policy Library) and Third Request searches within any ERO database is

13    unreasonable and a violation of FOIA. The declaration states that ICE did not perform these

14    searches for two reasons. First, "[t]he Plaintiff did not provide any privacy waivers to obtain

15    third party information which would allow ICE to search for and provide such records." Fuentes

16    Decl. at ¶ 34. ICE mischaracterizes the Second and Third Requests as seeking third party

17    information. It makes a passing reference to the Privacy Act, incorrectly asserting through a

18    footnote that "[p]ursuant to the Privacy Act of 1974 a request for records for a third party must

19    be accompanied by a Privacy Waiver, or proof that the individual who is the subject of the

20    records is deceased. The Plaintiff did not provide either." [3] *Id.* Second, the declaration alleges

21

22    [3] It is unclear why ICE interprets the Second and Third Requests as seeking private third party
information. Neither request on its face mentions any individual specifically and the Third Request
expressly notes, to avoid any confusion, that Plaintiff is seeking "I-213s, *with identifying information*

23    *redacted.*" If the Privacy Act were relevant here, ICE's interpretation would be in violation of its duty to
interpret FOIA requests liberally in favor of disclosure. *See Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th
Cir. 2017).

Plaintiff's Cross Motion for Summary Judgement– 15
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1  that "ICE does not specifically track the information requested in sections two and three of the

2  Plaintiff's FOIA." *Id.* at ¶ 34 Both of these justifications are invalid.

3

4        *1.  ICE's reliance on the Privacy Act (5 U.S.C. § 552a) is erroneous and in*
         *violation of FOIA.*

5

6        ICE's attempt to evade its obligations under FOIA by relying on the Privacy Act (5

7  U.S.C. § 552a) in its declaration is misplaced because this is an action under FOIA and not the

8  Privacy Act and because such reliance is in violation of FOIA.

9        First, this is not an action under the Privacy Act. The "FOIA and the Privacy Act are

10 distinct mechanisms for obtaining government information, and it is legal error to conflate

11 them." *Gonzales & Gonzales Bonds & Ins. Agency Inc v. U.S. Dep't of Homeland Sec.*, 913 F.

12 Supp. 2d 865, 868 n.3 (N.D. Cal. 2012) (citing *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487,

13 494 (1994)). While the initial request was both a FOIA and Privacy Act request, this litigation

14 only involves the FOIA request. *See* First Amended Complaint, at ¶ 1. Moreover, ICE's initial

15 cover letter following Search No. 1 treated the search as responsive *only* to FOIA. *See* Fuentes

16 Decl., Ex. 2 ("This letter is the final response to your Freedom of Information Act (FOIA)

17 request to U.S. Immigration and Customs Enforcement (ICE)….[i]f you are requesting access to

18 your own records (which is considered a Privacy Act request), you should know that OGIS does

19 not have the authority to handle requests made under the Privacy Act of 1974."). Therefore, the

20 relevant statutory provision governing this request is FOIA, 5 U.S.C. § 552.

21       There is no requirement under FOIA (5 U.S.C. § 552) that a third party waiver  be

22 provided before a search pertaining to third parties may be conducted.  In fact, one district court

23 invalidated a former DHS regulation governing FOIA that required such third party waivers

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

before a FOIA request is processed because it was a violation of FOIA. *See Gonzales & Gonzales Bonds & Ins. Agency Inc. v. United States Dep't of Homeland Sec.*, 913 F. Supp. 2d 865, 867 (N.D. Cal. 2012) (invalidating former 6 C.F.R. § 5.3 as a violation of FOIA because it required DHS FOIA requests pertaining to third parties to include third party waivers).

The difference between DHS's own implementing regulations governing its agency's FOIA requests and Privacy Act requests makes it clear that no third party waiver is required for a search to be performed under FOIA. *Compare* 6 C.F.R. § 5.3 (regulation governing FOIA) ("Where a request for records pertains to a third party, a requester *may receive greater access* by submitting either a notarized authorization signed by that individual…or a declaration…by that individual, authorizing disclosure of the records to the requester, or by submitting proof that the individual is deceased (e.g., a copy of a death certificate or an obituary)"(emphasis added) *with* 6 C.F.R. § 5.21(f) (regulation governing Privacy Act requests) ("(f) Verification in the case of third party information requests…*You must* also provide a statement from the individual certifying the individual's agreement that records concerning the individual may be released to you.) (emphasis added).

Second, ICE's use of the Privacy Act to forgo its duty to search under FOIA is a violation of FOIA. The statutory language of the two acts clarifies that the provisions of the Privacy Act cannot be used as a shield to protect agencies from their obligations under FOIA. On the one hand, under FOIA (5 U.S.C. § 552), agencies are required "upon any request for records" to make such records "promptly available to any person." 5 U.S.C. § 552(a)(3). Agencies can choose not to disclose records where an exemption applies. *See* 5 U.S.C. § 552(b). Section 552a(b) of the Privacy Act, on the other hand, states that:

//

Plaintiff's Cross Motion for Summary Judgement– 17
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

> "(b) no agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, *unless disclosure of the record would be…(2) required under section 552 of this title (FOIA)*."

5 U.S.C. § 552a(b) (emphasis added). This provision explains that the Privacy Act cannot bar the disclosure of records that FOIA makes public but may require the mandatory withholding of records that are exempt from FOIA. As one circuit court put it, "[t]he net effect of the interaction between the two statutes is that *where the FOIA requires disclosure, the Privacy Act will not stand in its way*, but where the *FOIA would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency*." *News-Press v. United States Dep't of Homeland Sec.*, 489 F.3d 1173, 1206 (11th Cir. 2007) (emphasis added). Given this statutory scheme, the Privacy Act bars FOIA disclosures *only* where a FOIA exemption applies to a record covered by the Privacy Act. This is not the case here. Before claiming any exemptions, ICE has simply refused to conduct a search, as is required by FOIA, by erroneously citing to the Privacy Act.

In *Grove v. CIA,* 752 F. Supp. 28 (D.D.C. 1990), a district court faced this exact issue of whether an agency can avoid performing a search under FOIA by citing to the Privacy Act. As here, the agencies in that case provided the district court with a declaration indicating "that they refused to search for records responsive to plaintiff's request 1-4, absent signed release authorizations from the individuals that were the subjects of those requests." *Id.* at 30. The declaration's author also "makes passing reference to the Privacy Act, 5 U.S.C. § 552a." *Id.* That court unsurprisingly held that "the Privacy Act is not to be used as a barrier to FOIA access." *Id.* at 30 (quotation omitted). The court found that because it's the agency's burden to prove that an exemption applies, the defendants in that case "have either failed to claim legal exemptions

Plaintiff's Cross Motion for Summary Judgement– 18
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

under the FOIA, or they have failed to provide support for a claim that an exemption would apply." *Id.* at 30. In this case, ICE has committed the same error.

> ### 2.  ICE's reliance on the claim that it "does not specifically track" the information sought in the Second and Third Requests is unreasonable

The adequacy of the agency's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Zemansky,* 767 F.2d, at 571 (quoting *Weisberg,* 745 F.2d, at 1485). In this case, Defendant's contention that it could not search ERO databases because "ICE does not specifically track the information requested in sections two and three of the Plaintiff's FOIA Request" is unreasonable because it is lacking in sufficient detail and contradicted by the declaration itself, case law, and information made publicly available by DHS.

Affidavits describing an agency's search are "sufficient for purposes of summary judgment *only if* they are relatively detailed…if they are nonconclusory and not impugned by evidence of bad faith." *Zemansky,* 767 F.2d, at 573 (emphasis added). Here, ICE's declaration is devoid of detail and conclusory in justifying its failure to perform the ERO searches. Given the extensive nature of the Second and Third Requests, a blanket statement that the records sought by the requests are "not specifically track[ed]" is so broad as to be meaningless. It is unclear from the declaration what specific aspect of each request is not tracked by ICE.

Moreover, ICE's justification is contradicted within the same declaration.  While the declaration implies that ICE could not perform a search responsive to the Second Request because it does not track the information requested, two different ICE components in fact performed a search responsive to the Second Request in Search No. 3 and Search No. 6. ICE

Plaintiff's Cross Motion for Summary Judgement– 19
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1   conducted those policy-related searches because the Second Request sought agency policies

2   regarding ICE's treatment of immigrant activists. *See* Fuentes Decl. at ¶¶ 36, 44. This

3   demonstrates that ICE is not impeded from performing a search responsive to the Second

4   Request within ERO's unsearched databases.[4]

5           ICE's reasoning is also contradicted by information about its databases available to the

6   public and prior case law. There can be no serious dispute about whether ICE specifically tracks

7   I-213s. As noted earlier, DHS records I-213s within two ERO databases, the Enforcement

8   Integrated Database (EID) and EID Arrest Graphical User Interface for Law Enforcement

9   (EAGLE). *See* Bryan Baker, Annual Report, Office of Immigration Statistics, *Immigration*

10  *Enforcement Actions: 2016* (December 2017), https://www.dhs.gov/sites/default

11  /files/publications/ Enforcement _Actions_2016.pdf.  Respondents in immigration court

12  regularly file FOIA requests seeking their A-File, which is a collection of documents that DHS

13  maintains for foreign-born individuals in the United States and which includes the I-213 form.

14  *See Shattering the One-Way Mirror: Discovery in Immigration Court*, 79 Brooklyn L. Rev.

15  1569, 1621. Not only can DHS agencies track individual I-213s, but they have in prior FOIA

16  cases demonstrated that they can track and release all Form I-213s completed within a specific

17  time period by an agency and all Form I-213s that include a specific search term.  For example,

18  in *Buffalo Evening News, Inc. v. United States Border Patrol*, 791 F. Supp. 386, 388 (W.D.N.Y.

19  1992), DHS released hundreds of I-213 forms in response to a FOIA request to a DHS agency

20  requesting "all Forms I-213" completed by that agency "from June to August 1988." In

21

---

22  [4] These other searches do not render ICE's search adequate with respect to the Second Request because
    the agency has not yet conducted any responsive searches within non-policy ERO databases, or provided
23  a reasonable justification for why it need not search databases where the records sought are most likely to
    be found. Additionally, Searches No. 3 and No. 6 are only responsive to policy-related records within
    Request 2.

Plaintiff's Cross Motion for Summary Judgement– 20
No. C18-655-JLR

National Immigration Project
Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

*Hernandez v. United States Customs & Border Prot. Agency*, No. 10-4602, 2012 U.S. Dist. LEXIS 14290 (E.D. La. Feb. 6, 2012), DHS released I-213 forms pertaining to 62 individuals following a FOIA request that sought all I-213 forms that included a specific method of locating or apprehending an individual. Notably, there was no Privacy Act objection raised in those cases to the search for or release of the I-213s, further undermining the agency's arguments here that the Privacy Act precludes performing a search.

### C.  ICE's Search was Inadequate Because it was Unreasonably Limited with Respect to the Search Terms Used and the Databases Searched

A number of the searches that ICE did conduct were also inadequate because they were unreasonably limited with respect to the search terms ICE used and the databases ICE searched.

In Search No. 5, OPLA conducted a search that was narrowly limited to "such search terms as: 'Maria Mora Villalpando,' and 'Villalpando.'" This narrow search demonstrates that OPLA never conducted a search reasonably calculated to find records responsive to the Second or Third Requests.  In fact, OPLA's search terms did not even cover the subjects of record noted in the First Request, which included "NWDC Resistance" and "Latino Advocacy." Given that OPLA is the "exclusive representative of DHS in immigration removal proceedings…litigating all removal cases," a simple search using variations of Plaintiff's name is not reasonably calculated to uncover documents relevant to Plaintiff's multi-part, multi-page FOIA request on the targeting of immigrant rights activists for removal. *Id* at ¶ 30. Had OPLA conducted an adequate search, it would have used search terms such as "Northwest Detention Center Resistance", "Latino Advocacy", "NWDC Resistance", "immigration advocacy", "immigration rights activist", "activism", "media", "protest", "advocacy", and "advocate."[5]

---

[5] Other ICE agencies used these exact terms to search for records responsive to this request. *See* Fuentes Decl. at ¶¶ 36-37, 39, 45, 47.

Plaintiff's Cross Motion for Summary Judgement– 21
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

Search No. 2 was also not reasonably calculated to find records responsive to the FOIA request because it was limited to a single ERO Field Office in Seattle. ICE states that "[a]s the Plaintiff's immigration matter is located in Seattle, the Seattle ERO Field Office would be the field office most likely to have records responsive to the Plaintiff's." *Id.* at ¶ 37. As noted earlier, Plaintiff's request does not only pertain to her own removal case but also to enforcement actions against other activists. It is therefore unreasonable for ICE not to have searched other Field Offices for records responsive to the Second and Third Requests.

Not only was Search No. 2 not reasonably calculated to find records responsive to the Second and Third Requests, the choice of databases searched indicates that the search was inadequate with respect to the First Request as well. The Deputy Field Office Director searched *only* his computer and his own Microsoft Outlook account. *Id.* According to the declaration, "no other officers were likely to have responsive records or would reasonably be expected to have responsive records." It is unreasonable that no other officer within the Seattle ERO Field Office had any records responsive to the First Request. This litigation has already uncovered hundreds of pages of e-mails and other documents pertaining to Plaintiff's removal case indicating the high-profile nature of this case within the Seattle ERO Field Office. It is implausible that records responsive to the First Request exist only within one computer and one Microsoft Outlook account belonging to a single officer within the Seattle ERO Field Office.

The unreasonable narrowness of Searches No. 5 and No. 2 indicate that ICE misconstrued Plaintiff's request and contravened the agency's "duty of liberal construction." *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017). *See also Sack v. Dep't of Justice*, 65 F. Supp. 3d 29, 36 (D.D.C. 2014) (finding an agency's narrow use of search terms was insufficient to prove it conducted an adequate search).

Plaintiff's Cross Motion for Summary Judgement– 22
No. C18-655-JLR

National Immigration Project
Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

# V.    CONCLUSION

In sum, ICE has not demonstrated beyond a material doubt it has conducted a search reasonably calculated to uncover all relevant documents because it did not conduct searches responsive to the Second and Third Request in the databases that are most likely to contain responsive records. ICE's declaration provides no rational explanation for why it did not conduct these searches. ICE's decision to not perform these searches is unreasonable and is a violation of FOIA.  ICE's search was also inadequate because a number of the searches it did conduct were unreasonably limited with respect to the search terms used and the databases searched.

For all the forgoing reasons, the Court should grant Plaintiff's Cross Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment with respect to the adequacy of ICE's search for responsive records, and order ICE to immediately conduct a search reasonably calculated to uncover the requested records. The new search should include, at a minimum: (1) searches responsive to the Third Request generally; (2) searches responsive to the Second and Third requests within the unsearched ERO databases, including searches of EID, EAGLE, ENFORCE, EARM, CIS and all national ERO Field Offices; (3) searches responsive to the Second and Third requests within OPLA databases; and (4) a search reasonably calculated to uncover all relevant documents responsive to the First Request within ERO's Seattle Field Office.

Respectfully submitted this 4th day of February, 2019.

*/s/  Khaled Alrabe                    .*

Khaled Alrabe, NY Bar Reg. 5542311 (admitted *pro hace vice*)
Elizabeth G. Simpson, NC #41596 (admitted *pro hace vice*)
NATIONAL IMMIGRATION PROJECT
 OF THE NATIONAL LAWYERS GUILD

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

89 South Street, Suite 603
Boston, MA  02111
Ph.    (617) 412-6794
Ph.    (703) 587-8563
Em.    elizabeth@nipnlg.org
Em.    khaled@nipnlg.org

 _/s/  Devin T. Theriot-Orr_               .
Devin T. Theriot-Orr, WSBA #33995
SUNBIRD LAW, PLLC
1001 4th Avenue, Suite 3200
Seattle, WA  98154
Ph.    (206) 962-5052
Fax    (206) 681-9663
Em.    devin@sunbird.law

Plaintiff's Cross Motion for Summary Judgement– 24
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111

1

## <u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on February 4, 2019 I served a copy of the foregoing *Plaintiff's Cross*

3    *Motion for Summary Judgement* and any attachments thereto on the following persons via this

4    Court's ECF system:

5        BRIAN C. KIPNIS
         Assistant United States Attorney
6        Office of the United States Attorney
         700 Stewart Street, Suite 5220
7        Seattle, Washington 98101-1271
         brian.kipnis@usdoj.gov
8
         SARAH K. MOREHEAD
9        Assistant United States Attorney
         United States Attorney's Office
10       700 Stewart Street, Suite 5220
         Seattle, Washington 98101
11       sarah.morehead@usdoj.gov

12

13   Dated this 4th day of February, 2019.

                                    */s/ Khaled Alrabe                    .*

14
                                    Khaled Alrabe, NY Bar Reg. 5542311 (admitted
15                                  *pro hace vice*)
                                    NATIONAL IMMIGRATION PROJECT
16                                    OF THE NATIONAL LAWYERS GUILD
                                    89 South Street, Suite 603
17                                  Boston, MA  02111
                                    Ph.    (617) 412-6794
18                                  Em.    khaled@nipnlg.org

19

20

21

22

23

Plaintiff's Cross Motion for Summary Judgement– 25
No. C18-655-JLR

National Immigration Project
 Of the National Lawyers Guild
89 South St., Suite 603,
Boston, MA 02111