1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

MARIA MORA-VILLALPANDO,

     Plaintiff,

 v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,

     Defendants.

11
12
13
14
15

CASE NO. C18-0655JLR

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

16

## I. INTRODUCTION

17

   Before the court are three motions:  (1) Defendants U.S. Immigration and Customs

18

Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and U.S.

19

Citizenship and Immigration Services's ("USCIS") (collectively, "Defendants") motion

20

for summary judgment (Def. MSJ (Dkt. # 35)); (2) Plaintiff Maria Mora-Villalpando's

21

cross motion for summary judgment (Plf. MSJ (Dkt. # 39)); and (3) Defendants' motion

22

to file a supplemental declaration (Def. Mot. (Dkt. # 49)).  In addition, Defendants filed a

1  surreply to the summary judgment motions asking the court to strike certain materials

2  from Ms. Mora-Villalpando's reply memorandum.  (*See* Surreply (Dkt. # 48); *see also*

3  Plf. Reply (Dkt. # 46).)  The court has considered the parties' motions and Defendants'

4  surreply, all submissions filed in support of and in opposition to the motions and surreply,

5  the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

6  (1) DENIES Defendants' request to strike portions of Ms. Mora-Villalpando's reply

7  memorandum, (2) GRANTS Defendants' motion to file a supplemental declaration, (3)

8  GRANTS in part and DENIES in part Defendants' motion for summary judgment, and

9  (4) GRANTS in part and DENIES in part Ms. Villalpando's cross motion for summary

10  judgment.

11  ## II.   BACKGROUND

12  On December 20, 2017, Ms. Mora-Villalpando received a notice to appear in

13  immigration court.  (FAC (Dkt. # 16) ¶¶ 5, 38.)  Her I-213 form, an official ICE

14  document which sets forth the basis to support a person's alleged alienage and

15  removability, notes that Ms. Mora-Villalpando has "extensive involvement with anti-ICE

16  protests and Latino advocacy programs" and that she "has become a public figure."  (*Id.*

17  ¶¶ 5, 39, Ex. 1.)  Motivated by this discovery and pursuant to the Freedom of Information

18  Act ("FOIA"), 5 U.S.C. § 552, on February 23, 2018, Ms. Mora-Villalpando requested

19  //

20

21  [1] No party requested oral argument on any motion (*see* Def. MSJ at 1; Plf. MSJ at 1; Def.
    Resp. (Dkt. # 43) at 1; Def. Mot.; Plf. Resp. to Def. Mot. (Dkt. # 51) at 1), and the court does not
    consider oral argument to be helpful to its disposition of the motions, *see* Local Rules W.D.
22  Wash. LCR 7(b)(4).

documents from Defendants related to the possibility that ICE was targeting immigrants-rights activists.  (*See* FAC ¶¶ 7, 42.)

Ms. Mora-Villalpando's FOIA request consists of three parts.  (*Id.* ¶ 42.)  The first part sought documents related to her own case ("First Request").  (*Id.* ¶ 43.)  Specifically, the First Request sought:

> 1.     Any and all records of communication within federal agencies or between federal, state, and/or local agencies relating to enforcement operations, investigations, intelligence gathering, surveillance, and/or issuance of a Notice to Appear against or relating to any of the SORs, 24 including, but not limited to Field Operations Worksheets, significant incident reports, intelligence reports, Forms I-203, and records within all DHS [Department of Homeland Security] databases, including but not limited to the Deportable Alien Control System (DACS), Enforcement Integrated Database (EID), ENFORCE Alien Removal Module (EARM), and/or HSI databases such as the Significant Event Notification system (SEN), Investigative Case Management system (ICM), FALCON-SA, electronic records in the Enterprise Document Management System or the Electronic Immigration System, FBI records, DOJ, criminal records, national intelligence records, NVC records, DOS records, Coversheets and Worksheets (including CARRP, TRIG, FDNS, and others), and all other records on behalf of, by, for, or otherwise referencing the SORs.
>
> 2.     Copy of all records referencing and related to each of the SORs.
>
> 3.     Copy of entire Alien records (A-Files), Petitioner records, Beneficiary records, Temporary Files (T-Files), Receipt Files (R-Files), Work Files (W-Files).
>
> 4.     Copy of records relating to the SOR's connected in any way to any apprehension of the SOR's by CBP or ICE or the FBI, detention of the SOR's by CBP or ICE or the FBI, expedited removal of the SOR's by CBP or ICE, records regarding inspection or examination of the SOR's upon arrival at a U.S. port of entry, and/or any records relating to any voluntary returns the SOR's by CBP.
>
> 5.     Copy of all notes and memos and post-it notes, whether handwritten or electronic; emails, whether archived or stored in inboxes, junk folders,

locally, remote, subfolders, or other storage locations; and all other written information and records regarding each of the SOR's.

6.     Copy of all FDNS-DB records, FDNS records, JTTF records, TECS records, OBIM records, FDNS-DS records, ATLAS records and results, SGNs, manual referral records, fraud tip referral records, FISAR reports, ASVVP records, CLAIMS and CLAIMS 3 records, BCS records, MFAS records, SER ADJ records, FIRS records, biometrics records, iDSM records, FACE records, ITL records, NCIC records, NDIS records, N-DEx records, LEO records, Guardian and e-Guardian records, No Fly records, TSC records, TRIP records, Consular Consolidated Database records, CI/HUMINT records, and all other electronic and paper information regarding each of the SOR's.

7.     All Customer Relationship Management (CRM) and Customer Management Information System (CMIS) and similar records, including but not limited to the National Customer Service Center (NCSC) and local USCIS offices, InfoPass records, FBI Call Centers and Offices (local or international), CBP Call Centers including Headquarters and Office Call Centers, and other points of contact, regarding or by each of the SOR's.

8.     All address records including but not limited to the Customer Relationship Interface Systems' (CRIS) Change of Address (CoA) component, AR-11's, AccurInt, and other record systems for any of each of the SOR's.

9.     All other records and references to any SOR, including references to other agencies holding or withholding information about each of the SOR's.

(*Id.*)

The second part of Ms. Mora-Villalpando's FOIA request sought documents related to ICE enforcement operations against other activists and individuals who speak out to the media ("Second Request"). (*Id.* ¶ 44.) Specifically, the Second Request sought:

Any and all records containing, describing, relating, or referring to guidance, guidelines, rules, policies, procedures, emails, trainings, press releases, public statements, summaries, post-investigation reports and any other

//

instructions or directives, past or present, regarding enforcement operations undertaken against individuals who:

       [1.]  provide a public statement or statements to the media regarding their immigration status;
       [2.]  provide a public statement or statements to the media regarding immigration enforcement of family members;
       [3.]  are involved in "anti-ICE protests" and/or "immigrant rights" activism;
       [4.]  are involved in "Latino advocacy programs," "immigration advocacy," "activism," and/or "organizing."

(*Id.*)

The third part of Ms. Mora-Villalpando's FOIA request sought I-213 forms pertaining to other activists and individuals who speak out to the media ("Third Request").  (*Id.* ¶ 45.)  Specifically, the Third Request sought:

Copies of any I-213s, with identifying information redacted, where ICE has initiated enforcement action against an individual due to:
       1. the individual's public statement or statements to the media regarding their immigration status;
       2. the individual's involvement in "anti-ICE protests;" and/or "immigrant rights" activism; and/or
       3. the individual's involvement in "Latino advocacy programs," "immigration advocacy," "activism," and/or "organizing."

(*Id.*)

USCIS responded to Ms. Mora-Villalpando's FOIA request in March 2018. (*Id.* ¶ 48.)  USCIS produced documents and referred Ms. Mora-Villalpando's request for her Alien File ("A-File") to ICE as the originating agency.  (*Id.* ¶¶ 47-48.)  CBP responded to Ms. Mora-Villalpando's FOIA request in May 2018.  (*Id.* ¶¶ 51-53.)

On March 15, 2018, ICE's FOIA Office requested that ICE's Office of Enforcement and Removal Operations ("ERO") conduct a search for records responsive

1  to Ms. Mora-Villalpando's FOIA request.  (Fuentes Decl. (Dkt. # 36) ¶ 32.)  The request

2  was submitted to ERO's Information Disclosure Unit ("IDU").  (*Id.*)  ERO IDU searched

3  four databases:  (1) Enforcement Integrated Database ("EID"); (2) EID Arrest Guide for

4  Law Enforcement ("EAGLE"); (3) the Immigration and Enforcement Operational

5  Records System's ("ENFORCE") Alien Removal Module ("EARM"); and (4) the Central

6  Index System ("CIS").  (*Id.* ¶ 33.)  ICE searched these databases solely for "records

7  pertaining to [Ms. Mora-Villalpando]," and the searches were "conducted using [Ms.

8  Mora-Villalpando's] first name, last name, alien number (A-number), country of birth[,]

9  and date of birth."  (*Id.*)

10       On April 26, 2018, ICE produced Ms. Mora-Villalpando's A-File in response to

11  USCIS's referral and withheld some documents from that file.  (FAC ¶ 55.)  ICE did not

12  produce any other documents in response to Ms. Mora-Villalpando's FOIA request until

13  after she filed the present lawsuit on May 4, 2018.  (*See id.* ¶ 57; *see generally* Compl.

14  (Dkt. # 1).)

15       In her first amended complaint, Ms. Mora-Villalpando alleges that documents

16  responsive to her FOIA requests "will shed light on the legality of Defendants' actions

17  against her and other immigration rights activists."  (FAC ¶ 8.)  She seeks an order

18  "requiring Defendants to produce, and enjoining Defendants from withholding, records

19  responsive to" her FOIA request.  (*Id.* ¶ 12; *see also id.* at 19 (Prayer for Relief).)

20       By letter dated May 30, 2018, ICE informed Ms. Mora-Villalpando that a search

21  of ICE's ERO for records responsive to her FOIA request produced five pages—portions

22  of which ICE withheld based on various FOIA exemptions.  (Fuentes Decl. ¶ 18, Ex. 2.)

ICE states in its May 30, 2018, letter to Ms. Mora-Villalpando that it is responding to a request for "all records pertaining to MARU/MARIA MORA VILLALPANDO, DOB: XX/XX/1970, COB:  MEXICO, A-xxx-xxx-xxx." (*Id.*; *see* FAC ¶ 57.)  ICE's May 30, 2018, letter does not refer to Ms. Mora-Villalpando's Second or Third Requests. (Fuentes Decl. ¶ 18, Ex. 2.)  Indeed, ICE confirms that, although Ms. Mora-Villalpando's Second and Third Requests "sought documents other than those that pertained to Plaintiff," ICE initially only searched for records pertaining to Ms. Mora-Villalpando. (Fuentes Decl. ¶ 34.)  ICE indicates that it so limited its initial search because Ms. Mora-Villalpando did not "provide any privacy waivers to obtain third-party information" pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, and because it "does not specifically track the information requested" in Ms. Mora-Villalpando's Second and Third Requests.  (*Id.* ¶ 34 & n.6.)  However, ICE's May 30, 2018, letter does not raise any Privacy Act concerns or objections based on burden or over-breadth.  (*See id*. ¶ 18, Ex. 2.)

On August 22, 2018, the court ordered the parties to "confer and file a proposal with specific dates for the resolution of this case."  (Min. Entry (Dkt. # 29).)  In response to the court's order, the parties agreed that ICE would produce any additional responsive documents by September 21, 2018, and prepare a *Vaughn* index[2] and serve it on Ms. Mora-Villalpando by October 22, 2018.  (Stip. Order (Dkt. # 31).)

//

//

---

[2] *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

1    All three Defendants produced additional documents after this lawsuit was filed.

2    (*See* Def. MSJ at 5.)  By letter dated September 21, 2018, ICE produced a total of 339

3    pages of responsive documents, including:  (1) 304 additional pages located by ICE's

4    ERO, (1) 24 pages located by ICE's Office of Principal Legal Advisor (OPLA"), and (3)

5    11 pages located by ICE's Office of Policy ("ICE Policy").  (Fuentes Decl. ¶ 23, Ex. 3.)

6    On October 24, 2018, ICE produced an additional 321 responsive pages of responsive

7    documents located by the ICE Office of Public Affairs ("OPA").  (*Id.* ¶ 24, Ex. 4.)  ICE

8    produced a final *Vaughn* index describing the FOIA exemptions.  (Plf. MSJ at 6.)

9    To locate the documents contained in its September 21, 2018, and October 24,

10   2018, supplemental productions, ICE conducted several additional searches for

11   documents responsive to Ms. Mora-Villalpando's FOIA requests.  (*See* Fuentes Decl.

12   ¶¶ 35-48.)  First, ERO IDU directed the Deputy Field Office Director ("DFOD") of the

13   Seattle ERO Field Office to search for responsive documents.  (*Id.* ¶ 37.)  The DFOD

14   searched his computer and his Microsoft Outlook account.  (*Id.*)  He conducted a search

15   "using terms such as 'Maru Mora Villalpando,' 'Maria Mora Villalpando,' 'Villalpando,'

16   'Maru Mora,' 'Northwest Detention Center Resistance,' 'Latino Advocacy,' and "NWDC

17   Resistance.'"  (*Id.*)  In addition, the Supervisory Detention and Deportation Officer

18   ("SDDO") and the Deportation Officer ("DO"), who were assigned to Ms.

19   Mora-Villalpando's enforcement action, also searched for records in the Seattle ERO

20   Field Office.  (Supp. Fuentes Decl. (Dkt. # 45) ¶ 25.)

21   ERO IDU also directed ERO Policy to search for responsive records.  (*Id.* ¶ 36.)

22   ERO Policy "issues and maintains policies, directives, memoranda, handbooks, and

1   standard operating procedures specific to ERO."  (*Id.*)  A Detention and Deportation

2   Officer ("DDO") performed the search in the ERO Policy Library and the DDO used

3   search terms such as:  "Enforcement Action," "Activism," "Immigration Advocacy," and

4   "Immigration Rights Activists."  (*Id.*)

5        ICE's FOIA Office directed Homeland Securities Investigations ("HSI") to search

6   for responsive records.  (*Id.* ¶ 39.)  HSI assigned a Mission Support Specialist ("MSS") to

7   conduct the search.  (*Id.*)  The MSS searched HSI's Investigative Case Management

8   System ("ICM") using search terms such as "Maria Mora Villalpando," "Maru Mora

9   Villalpando," Northwest Detention Center Restistance," "NWDC Resistance," "Latino

10  Advocacy," "Enforcement Action," "Activism," "Immigration Advocacy," "Immigration

11  Rights Activist," and Ms. Mora-Villalpando's name, date of birth, and A-number.  (*Id.*

12  ¶ 40.)  The search yielded no responsive records.  (*Id.*)

13       ICE's FOIA Office also directed OPLA to search for responsive records.  (*Id.*

14  ¶ 41.)  OPLA assigned its Deputy Chief of Knowledge and Management Division

15  ("KMD") to conduct the search.  (*Id.*)  The Deputy Chief search Microsoft Outlook, the

16  Principal Legal Advisor's Network ("PLAnet") and Sharepoint databases using search

17  terms such as "Maria Mora Villalpando" and "Villalpando."  (*Id.* ¶ 42.)  The search

18  yielded responsive documents, which were forwarded to ICE's FOIA Office for review,

19  processing, and production to Ms. Mora-Villalpando.  (*Id.* ¶¶ 42-43.)

20       ICE's FOIA Office also directed ICE Policy to search for responsive records

21  because Ms. Mora-Villalpando's Second Request asked for policies regarding "agency

22  policies regarding the treatment of immigrant advocates."  (*Id.* ¶ 44.)  ICE Policy

1   assigned a Management and Program Analyst ("MPA") to conduct the search.  (*Id.*)  The

2   MPA searched Policy Sharepoint, Shared Drive, Microsoft Outlook, and the Internal ICE

3   Policy Manual using search terms such as "media," "family," "protest," "activism,"

4   "advocacy," "Latino," "immigration status," and "press."  (*Id.* ¶ 45.)  The search yielded

5   responsive documents, which were forwarded to ICE's FOIA Office for review,

6   processing, and production to Ms. Mora-Villalpando.  (*Id.* ¶¶ 45-46.)

7          Finally, ICE's FOIA Office directed OPA to search for responsive documents.

8   (*Id.* ¶ 47.)  OPA assigned the Division Chief of Mission Support ("DCMM") to conduct

9   the search.  (*Id.*)  The DCMM searched her own computer, her Microsoft Outlook

10  account, OPA's shared drive, and requested 27 OPA employees to conduct similar

11  searches.  (*Id.*)  These searches used search terms such as "Mora Villalpando," "Latino

12  activist," "activist," "immigration advocacy," "activism," "advocate," and "Villalpando."

13  (*Id.* ¶ 48.)  The searches yielded responsive documents, which were forwarded to ICE's

14  FOIA Office for review, processing, and production to Ms. Mora-Villalpando.  (*Id.*

15  ¶¶ 48-49.)

16         On December 21, 2018, Defendants filed a motion for summary judgment that

17  ICE performed an adequate search for Ms. Mora-Villalpando's FOIA requests.  (*See* Def.

18  MSJ.)  On February 26, 2019, Ms. Mora-Villalpando responded and cross-moved for

19  summary judgment that ICE's search was inadequate.  (*See* Plf. MSJ.)  Ms.

20  Mora-Villalpando does not challenge ICE's withholding of certain materials based on

21  various FOIA exemptions.  (*See generally* Plf. MSJ.)  On April 24, Defendants filed a

22  surreply seeking to strike a portion of Ms. Villanlpando's reply memorandum.  (*See*

1    Surreply; *see also* Plf. Reply.)  On May 2, 2019, Defendants moved to file a

2    supplemental declaration to clarify ICE's search capabilities in the ERO databases.  (*See*

3    Def. Mot.)  The court now considers the parties' motions and Defendants' surreply.

### III.    ANALYSIS

5    **A.    Standard of Review**

6    "Most FOIA cases are resolved by the district court on summary judgment, with

7    the district court entering judgment as a matter of law."  *Animal Legal Def. Fund v. U.S.*

8    *Food & Drug Admin*., 836 F.3d 987, 989 (9th Cir. 2016) (*en banc*); *see also Sakamoto v.*

9    *EPA*, 443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006) ("It is generally recognized that

10   summary judgment is a proper avenue for resolving a FOIA claim.") (citing *Nat'l*

11   *Wildlife Fed'n v. U.S. Forest Serv*., 861 F.2d 1114 (9th Cir. 1988)).  Nevertheless, the

12   usual summary judgment standards apply and "if there are genuine issues of material fact

13   in a FOIA case, the district court should proceed to a bench trial or adversary hearing"

14   and issue findings of fact and conclusions of law.  *Animal Legal Def. Fund*, 836 F.3d at

15   990 (citing Fed. R. Civ. P. 52(a)(1)); *see also Cameranesi v. U.S. Dep't of Def*., 856 F.3d

16   626, 636 (9th Cir. 2017) ("We have now overruled this FOIA-specific summary

17   judgment standard, and instead apply our usual summary judgment standard.").[3]

18

19   _____

     [3] Before the *en banc* decision in *Animal Legal Defense Fund*, this was not the case in the
     Ninth Circuit.  Instead, "[u]nlike the typical summary judgment analysis," in a FOIA case, the

20   court did "not ask whether there [wa]s a genuine issue of material fact, because the facts [we]re
     rarely in dispute."  *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  The question was whether

21   "an adequate factual basis" existed "upon which to base [a] decision" on the FOIA claim at
     issue.  *Id*.; *see also Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1040 (9th Cir. 1999).
     Moreover, government affidavits could supply the requisite factual basis.  *Lane v. Dep't of*

22   *Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008).

1    Accordingly, summary judgment is appropriate if the moving party "shows that

2    there is no genuine dispute as to any material fact and the movant is entitled to judgment

3    as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the

4    moving party "initially bears the burden of proving the absence of a genuine issue of

5    material fact."  *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010) (citing

6    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may meet its

7    burden by "citing to particular parts of materials in the record, including depositions,

8    documents, electronically store information, affidavits or declarations, stipulations

9    (including those made for purposes of the motion only), admission, interrogatory

10    answers, or other materials" or by showing that such materials "do not establish the

11    absence or presence of a genuine dispute, or that the adverse party cannot produce

12    admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

13    **B.    Preliminary Matters**

14    Before the court considers the parties' cross motions for summary judgment, the

15    court will resolve Defendants' surreply asking the court to strike certain material from

16    Ms. Mora-Villalpando's reply memorandum and Defendants' motion to file a

17    supplemental declaration.  (*See* Surreply; Def. Mot.)

18    1.  Defendants' Surreply

19    In their surreply, Defendants ask the court to strike the portion of Ms.

20    Mora-Villalpando's reply memorandum in which she argues that ICE should search for

21    documents responsive to her FOIA request in the Enterprise Document Management

22    System ("EDMS").  (Surreply at 1-2 (citing Plf. Reply at 6:3-14, 10:2-6)); *see* Local

1   Rules W.D. Wash. LCR 7(g) (providing that if new facts or arguments are introduced in a

2   reply, the nonmoving party may file a surreply requesting that the court strike the

3   material).  Defendants argue that Ms. Mora-Villalpando's arguments concerning ICE's

4   ability to search the EDMS database represent an impermissible new argument in Ms.

5   Villalpando's reply.  (*Id.* at 1 (citing *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR,

6   2017 WL 4758761, at *4 (W.D. Wash. Oct. 20, 2017), *reconsideration denied*, No.

7   17-0217JLR, 2018 WL 581071 (W.D. Wash. Jan. 25, 2018)).)

8        The court disagrees.  Ms. Mora-Villalpando made these arguments in response to

9   Defendants' assertions that they never searched any ERO databases for documents

10  responsive to her Second or Third Requests because those databases are only searchable

11  with a personal identifier or because key word searches cannot be done.  (*See* Reply at 4.)

12  In identifying the EDMS as a database accessible to ICE through which digitized A-Files

13  "may be retrieved 'through a full text-based search of records,'" Ms. Mora-Villalpando

14  relies on a System of Records Notice ("SORN") Defendants cite and rely upon in the

15  supplemental declaration they filed in support of their response to Ms.

16  Mora-Villalpando's cross motion for summary judgment.  (*See id.* at 6 (quoting 76 Fed.

17  Reg. at 34239)); *see also* Def. Resp. at 3; Supp. Fuentes Decl. ¶¶ 11, 13, 16.)  Defendants

18  may not rely upon this source of information to bolster their own arguments but then

19  deny Ms. Mora-Villalpando the opportunity to rebut those assertions using the same

20  source.  Accordingly, the court DENIES Defendants' request to strike portions of Ms.

21  Mora-Villalpando's reply memorandum.

22  //

1      2.  Defendants' Motion to File a Supplemental Declaration

2          On May 2, 2019, Defendants moved to file a supplemental declaration following

3  the close of briefing on the parties' cross motions for summary judgment.  (*See* Def.

4  Mot.; *see also* Wilson Decl. (Dkt. # 50).)  Defendants urge the court to permit the filing

5  "to address one point" in Ms. Mora-Villalpando's reply memorandum.  (*Id.* at 1.)

6  Specifically, Defendants ask to file the declaration to "clarify . . . ICE's search

7  capabilities in the ERO databases."  (*Id.* at 2.)  Ms. Mora-Villalpando states that she

8  "takes no position on . . . Defendants' [m]otion to [s]upplement the [r]ecord."  (Plf. Resp.

9  to Def. Mot. at 1.)  Because Ms. Mora-Villalpando does not object, the court GRANTS

10  Defendants' motion to file the supplemental declaration.

11  **C.    The Adequacy of ICE's Searches**

12          FOIA establishes "a judicially enforceable right to secure [government]

13  information from possibly unwilling official hands."  *Dep't of Air Force v. Rose*, 425

14  U.S. 352, 361 (1976) (citing S. Rep. No. 813, 89th Cong. (1st Sess. 1965)); *see also Lahr*

15  *v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).  The aim of these

16  disclosure requirements is to "ensure an informed citizenry, vital to the functioning of a

17  democratic society, needed to check against corruption and to hold the governors

18  accountable to the governed."  *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242

19  (1978); *see also Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015);

20  *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012).

21          Federal agencies have a duty to construe FOIA requests liberally.  *Yagman v.*

22  *Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017).  In addition, "[i]n response to a FOIA

1  request, a government agency must conduct a search "reasonably calculated to uncover

2  all relevant documents."  *Lahr*, 569 F.3d at 986.  To demonstrate that it has conducted a

3  reasonable search, an agency may produce "reasonably detailed, nonconclusory affidavits

4  submitted in good faith."  *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)

5  (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also*

6  *Lahr*, 569 F.3d at 986; *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45

7  F.3d 1325, 1328 (9th Cir. 1995).  The court will consider the adequacy of ICE's search

8  with respect to Ms. Mora-Villalpando's First, Second, and Third Requests, in turn.

9        1.    <u>First Request</u>

10       In her cross motion and response to Defendants' motion for summary judgment,

11  Ms. Mora-Villalpando briefly argues without evidentiary foundation that it is

12  "unreasonable that no other officer within the Seattle ERO Field Office had any records

13  responsive to the First Request" and that it is "implausible that records responsive to the

14  First Request exist only within one computer and one Microsoft Outlook account

15  belonging to a single officer within the Seattle ERO Field Office."  (Plf. MSJ at 22.)

16  Based on this brief argument, she seeks an order requiring ICE to conduct "a search

17  reasonably calculated to uncover all relevant documents responsive to the First Request."

18  (*Id.* at 23.)

19       Ms. Mora-Villalpando, however, ignores that ICE in fact searched numerous other

20  components for documents responsive to her First Request in addition to the Seattle ERO

21  Field Office.  (*See* Fuentes Decl. ¶¶ 26, 32-33, 35, 40, 42, 48 (detailing nationwide

22  searches by ERO, OPLA, HSI, OPA, and Policy).)  ICE also searched nationwide

1    databases, including EID, EAGLE and ENFORCE EARM.  (*Id.* ¶ 33.)  In addition, as

2    ICE explained, because Ms. Mora-Villalpando's immigration matter is in Seattle, "the

3    Seattle ERO Field Office would be the field office most likely to have records responsive

4    to [Ms. Mora-Villalpando's] FOIA request."  (*Id.* ¶ 37.)  Thus, the DFOD was assigned

5    to search for responsive records.  (*Id.*)  However, the DFOD was not the only officer

6    assigned in the Seattle ERO Field Office to search for records responsive to Ms.

7    Mora-Villalpando's First Request.  (*See* Supp. Fuentes Decl. ¶ 27.)  In addition to the

8    DFOD, the SDDO and the DO assigned to Ms. Mora-Villalpando's enforcement action

9    also searched for responsive records.  (*Id.*)  The employees searched their computers

10   (desktop, hard drive, and shared drive) and their Outlook email accounts for responsive

11   records.  (*Id.*)

12         Because Ms. Mora-Villalpando fails to counter any of ICE's evidence regarding

13   the reasonableness of its searches for documents responsive to her First Request with

14   anything other than speculation, ICE is entitled to summary judgment on the adequacy of

15   these searches.  "Conclusory allegations unsupported by factual data will not create a

16   triable issue of fact."  *Marks v. U.S. (Dep't of Justice)*, 578 F.2d 261, 263 (9th Cir. 1978)

17   (citing *Cal. ex rel. Dep't of Transp. v. United States*, 561 F.2d 731, 733 n.4 (9th Cir.

18   1977)).  Accordingly, the court GRANTS ICE's motion for summary judgment on this

19   //

20   //

21   //

22   //

1   portion of Ms. Mora-Villalpando's FOIA request and DENIES Ms. Villalpando's cross

2   motion on the same issue.[4]

3          2.      Second Request

4          ICE asserts that it conducted a reasonable search for documents responsive to Ms.

5   Mora-Villalpando's Second Request.  (*See generally* Def. MSJ; *see* Def. Resp. at 8-12.)

6   ERO Policy searched for documents related to the Second Request because that office

7   coordinates the development, review, clearance, and cancellation of ERO policy and

8   policy-related documents.  (Fuentes Supp. Decl. ¶¶ 20-23.)  In addition, HSI, OPA, and

9   OPLA conducted searches related to the Second Request using the search terms Ms.

10  Mora-Villalpando provided.  (*Id.* ¶¶ 30-41.)  Finally, ICE conducted a search of the

11  Seattle ERO Field Office for documents related to the Second Request insofar as those

12  documents also pertained to Ms. Mora-Villalpando and her case.  (*Id.* ¶¶ 24-28.)

13  Specifically, three individuals in the Seattle Field Office searched for records—the

14  DFOD, as well as the SDDO and the DO, who were assigned to Ms. Mora-Villalpando's

15  enforcement action.  (*See id.* ¶¶ 24-25.)

16         Ms. Mora-Villalpando responds that ICE's search for documents responsive to her

17  Second Request was not reasonable in several respects.  First, she argues that, in addition

18  to ERO Policy, ICE should have searched other databases for documents responsive to

19  the Second Request, including EID, EAGLE, ENFORCE, EARM, CIS, and EDMS.  (Plf.

20  //

21         _____

       [4] The court also notes that Ms. Mora-Villalpando drops any argument or request for relief
22  concerning the inadequacy of Defendants' search of her First Request in her reply memorandum.
    (*See generally* Plf. Reply.)

1   Reply at 4-6.)  The court will first address the EID, EAGLE, ENFORCE, EARM, and

2   CIS databases, and then turn to the EDMS database.

3          Although ICE searched the EID, EAGLE, ENFORCE, EARM, and CIS databases,

4   it did so only for documents specifically pertaining to Ms. Mora-Villalpando and, thus,

5   that were responsive to her First Request.  (*See* Supp. Fuentes Decl. ¶ 34.)  Initially, ICE

6   stated that it did not search these databases for documents related to Ms.

7   Mora-Villalpando's Second or Third Requests because (1) she did not provide any

8   privacy waivers to obtain third-party information, and (2) these databases do not track the

9   type of information described in her Second and Third Requests.  (Fuentes Decl. ¶ 34.)

10  ICE has implicitly withdrawn its first reason for declining to search these databases (*see*

11  Def. Resp. at 2) but stands by its second reason that the databases do not specifically

12  track the information Ms. Mora-Villalpando seeks in her Second and Third Requests (*see*

13  *id.* at 9-10).  Specifically, ICE maintains that key word searches cannot be conducted in

14  any of these databases because they are only searchable with a personal identifier.  (Supp.

15  Fuentes Decl. ¶¶ 15, 17.)

16         Ms. Mora-Villalpando argues that ICE's assertion concerning the capabilities of

17  these databases conflicts with public documents upon which ICE's declarant relies.  (Plf.

18  Reply at 4.)  Specifically, she cites two SORNs, which are Federal Register notices

19  required by the Privacy Act and describing, among other things, how information is

20  retrieved from the databases at issue.  (*See* Supp. Fuentes Decl. ¶¶ 11-14, Exs. B-C.)  The

21  first SORN describes the workings of the CARIER system ("CARIER SORN"), which

22  includes the ENCORE, EID, EAGLE, and EARM databases.  *See* 81 Fed. Reg. 72080-01

(Oct. 19, 2016); (*see also* Supp. Fuentes Decl. ¶ 11, Ex. B.)  The CARIER SORN states

that "ICE may retrieve records by name, biometric identifiers, identification numbers

including, but not limited to, A-Number, fingerprint identification number, SSN, case or

record number if applicable, case related data, or a combination of other personal

identifiers including, but not limited to, date of birth, and nationality."  81 Fed. Reg. at

72088.  The CARIER SORN describes "case related data" to include:  case number,

record number, case category, charges brought and disposition, case agent, data initiated

and completed, and "[o]ther data describing an event involving alleged violations of

criminal or immigration law (i.e., location; date; time; type of criminal or immigration

law violations alleged; type of property involved; use of violence, weapons, or assault

against DHS personnel or third parties; attempted escape; and other related information."

*Id.* at 72084.  Ms. Mora-Villalpando argues that the foregoing language "flatly refutes

ICE's assertion that it can *only* search databases using personal identifiers."  (Plf. Reply

at 5.)  Moreover, she asserts that "data describing events involving alleged violations of

the immigration law are precisely the type of data that would be responsive to [her]

Second and Third Requests."  (*Id.* at 5-6.)

Ms. Mora-Villalpando stretches the statements she relies upon in the CARIER

SORN too far when she concludes that "case related data" is susceptible to key word

searches.  Defendants responded to Ms. Mora-Villalpando's assertions with an additional

//

//

//

1   declaration "to clarify . . . ICE's search capabilities in the ERO databases."[5]  (Def. Mot.

2   at 2; *see also* Wilson Decl.)  The declarant explains that a search for the terms Ms.

3   Mora-Villalpando provides in her FOIA requests is not possible because the terms, if they

4   appeared in these databases, would be in the narrative portion of the I-213 forms and this

5   portion of the form is a free form text field that is not searchable.  (Wilson Decl. ¶ 10.)

6   Indeed, "[a] key word search cannot be performed in these databases."  (*Id.* ¶ 8.)  The

7   court accepts this clarification and concludes that ICE has demonstrated that it conducted

8   a good faith, reasonable search of the EID, EAGLE, ENFORCE, EARM, and CIS

9   databases.[6]

10          The court cannot conclude the same, however, with respect to the EDMS database.

11   The second SORN relied upon by Defendants describes the retrievability of other DHS

12   databases, including the CIS and EDMS databases ("CIS/EDMS SORN").  *See* 76 Fed.

13   Reg. 34233 (June 13, 2011); (*see also* Supp. Fuentes Decl. ¶ 13, Ex. C.)  EDMS is a

14   DHS-wide database that contains digitized A-files and is accessible to ICE.  *See* 76 Fed.

15   Reg. at 34236 (stating that "EDMS maintains the electronic copy of the A-File"), 34238

16   (stating that "[r]outine uses . . . include disclosure to . . . DHS or any component

17   //

18

---

19   [5] As noted above, Ms. Mora-Villalpando took "no position" on Defendants' motion to
    supplement the record with this declaration (*see* Plf. Resp. to Def. Mot. at 1), and so the court
20   considers the declaration.  *See supra* § III.B.2.

21   [6] Ms. Mora-Villalpando provides no basis in her reply memorandum for challenging
    Defendants' position that "searches in the CIS database require an identifier specific to an
    individual."  (*See* Plf. Reply at 4-6.)  Thus, the court concludes that ICE's search of this database
22   was reasonable.

1    thereof").[7]  As Ms. Mora-Villalpando points out, the CIS/EDMS SORN states that the

2    "[d]igitized A-files maintain in EDMS can be searched and retrieved . . . "[t]hrough a full

3    text-based search of records contained in the digitized A-File (based on optical character

4    recognition of the scanned images)."  76 Fed. Reg. at 34239; *see also* Plf. Reply at 6.

5    Thus, the CIS/EDMS SORN indicates that ICE can perform a text-based search of the

6    EDMS database.[8]  A reasonable attempt to uncover all relevant documents requires a

7    search of all databases likely to contain responsive documents.  *See Valencia-Lucena v.*

8    *U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) ("The agency cannot limit its

9    search to only one or more places if there are additional sources that are likely to turn up

10   the information requested.") (internal quotation marks omitted).  Thus, the court

11   concludes that ICE's failure to search this database rendered its search related to Ms.

12   Mora-Villalpando's Second Request unreasonable.[9]

13

14       [7] ICE is a component of DHS.  (*See* FAC ¶ 15); *see also B.I.C. v. Asher*, No.
     C16-132-MJP-JPD, 2016 WL 8672760, at *2 (W.D. Wash. Feb. 19, 2016) ("Congress created
15   DHS and transferred most immigration functions formerly performed by INS to DHS and its
     components, including U.S. Citizenship and Immigration Services, U.S. Customs and Border
16   Protection, and ICE.").

17       [8] ICE's declarant notes that USCIS, not ICE, is the custodian of records for A-Files, and
     USCIS is a separate component of DHS.  (*See* Wilson Decl. ¶ 7.)  The court, however, does not
18   view these facts as a barrier to ICE's or Defendants' ability to search the EDMS database.  As
     noted above, the CIS/EDMS SORN states the EDMS database is available to "DHS or any
19   component thereof," 76 Fed. Reg. at 34238, and ICE is a component of DHS, *see supra* n.7.  In
     any event, USCIS is also a Defendant in this suit.  (*See* FAC ¶ 17.)

20       [9] Although Defendants offered to provide the court with "supplementary information
     regarding its search capabilities in the EDMS system," Defendants did not assert that EDMS was
21   unlikely to contain material responsive to Ms. Mora-Villalpando's FOIA request.  (*See* Def. Mot.
     at 2.)  Further, given the unambiguous information provided in the CIS/EDMS SORN, the court
22   did not consider additional information concerning Defendants' abilities to search the database to
     be necessary.

1        Ms. Mora-Villalpando also faults ICE for its failure to search OPLA databases for

2    records responsive to the Second Request even though such databases are likely to

3    contain responsive documents.[10]  (*See* Plf. MSJ at 21; Plf. Reply at 7.)  OPLA performed

4    a search limited to variations of Ms. Mora-Villalpando's name, which rendered the

5    response applicable to her First Request only.  (Fuentes Decl. ¶ 44.)  Defendants fail to

6    explain why they so limited their search and did not search the OPLA databases using

7    any of the key words provided in Ms. Mora-Villalpando's Second Request, such as

8    "anti-ICE protests," "immigrant rights" "activism," "Latino advocacy programs,"

9    "immigration advocacy," "activism," and "organizing."  (*See id.*; Supp. Fuentes Decl.

10   ¶ 42; *see also* FAC ¶ 44.)  In this instance, the court concludes that ICE has not produced

11   a "reasonably detailed, nonconclusory affidavit[]" concerning its search of the OPLA

12   databases and so fails to demonstrate that it conducted a reasonable search.  *See*

13   *Zemansky*, 767 F.2d at 571; *see also Lahr*, 569 F.3d at 986; *Citizens Comm'n on Human*

14   *Rights*, 45 F.3d at 1328.

15       Finally, Ms. Mora-Villalpando argues that ICE's search regarding her Second

16   Request was not reasonably calculated to uncover responsive records because ICE

17   ─────────────────

18       [10] In support of her argument that these databases are likely to contain responsive
materials, Ms. Mora-Villalpando notes that "the OPLA Case Management System (OCMS) 'is
19   able to electronically store documents and information typically found in the A-File.'"  (Plf.
Reply at 7 n.2 (citing *Privacy Impact Assessment for the OPLA Case Management System*
20   *DHS/ACE/PIA-036* (June 26, 2013) at 2, available at
https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-036-ocms-appendixupdate-
21   may2017.pdf).)  She argues that, because A-Files contain I-213 forms and other key information
tied to enforcement operations, this database is likely to contain records responsive to the Second
22   and Third Requests.  (*Id.*; *see also* Def. Resp. at 3 ("Final I-213s are stored in Alien Files
('A-files') that reside with USCIS.") (citing Supp. Fuentes Decl. ¶ 16).)  The court agrees.

1  declined to search all 24 ERO Field Offices located around the country and instead

2  searched only the ERO Field Office located in Seattle.  (Plf. MSJ at 22; Plf. Reply at 8.)

3  Ms. Mora-Villalpando argues that because her Second Request pertains to enforcement

4  operations and ERO's "enforcement and removal efforts are conducted by its 24 national

5  field offices and headquarters (HQ)," it is likely that the 23 ERO Field Offices that ICE

6  did not search contain responsive records.  (Plf. Reply at 8 (quoting Fuentes Decl. ¶ 34).)

7         Defendants responds that requiring ICE to conduct a search in all 24 ERO Field

8  Offices would be unreasonable.  Defendants assert that ICE searched the Seattle ERO

9  Field Office for responsive records "because based on the location of [Ms.

10  Mora-Villalpando's] case, Seattle was the Field Office most likely to have records

11  responsive to [Ms. Mora-Villalpando's] FOIA request."  (Supp. Fuentes Decl. ¶ 27.)

12  Further, the search in the Seattle ERO Field Office was limited to three individuals—the

13  DFOD, as well as the SDDO and DO, who were assigned to Ms. Mora-Villalpando's

14  enforcement action.  (*Id.* ¶ 25.)  If ICE were to perform searches in all 24 ERO Field

15  Offices, the foregoing limitation confining the search to those individuals specifically

16  involved with Ms. Mora-Villalpando's enforcement action would be inapplicable.  (*See*

17  *id.* ¶ 28 & n.15.)  Thus, all 7,621 employees in all ERO Field Offices would need to run

18  keyword searches for any records responsive to Ms. Mora-Villalpando's FOIA request.

19  (*Id.*)  The court agrees with Defendants that requiring such a search would be

20  unreasonable.  *See, e.g.*, *Marks*, 578 F.2d at 263 (finding that even if the plaintiff is

21  considered to have requested a search of every field office of the FBI, "broad, sweeping

22  requests lacking specificity are not permissible"); *Dale v. IRS*, 283 F. Supp. 2d 99,

1   104-05 (D.D.C. 2002) (concluding that the plaintiff is not allowed to use FOIA to

2   conduct a "fishing expedition of files at IRS offices across the country, at taxpayer

3   expense").

4         Further, Defendants note that other ERO Field Offices are unlikely to have

5   documents responsive to Ms. Mora-Villalpando's Second and Third Requests, and ICE

6   conducted numerous nationwide searches through other sources that were likely to

7   contain responsive documents.  (*See* Supp. Fuentes Decl. ¶¶ 26, 29 (stating that the

8   Seattle Field Office would not likely have documents responsive to the Second and Third

9   Requests and detailing nationwide searches by ERO, the OPLA, HSI, OPA, and Policy).)

10   Based on these unrefuted representations, the court concludes that Defendants are entitled

11   to summary judgment with respect to ICE's decision to limit its search to the Seattle ERO

12   Field Office.

13         In sum, the court concludes that ICE's search for documents responsive to Ms.

14   Mora-Villalpando's Second Request was reasonable except for its failures to search the

15   EDMS database and to conduct keyword searches of OPLA's databases as described

16   above.  Accordingly, with respect to Ms. Mora-Villalpando's Second Request, the court

17   GRANTS in part and DENIES in part Defendants' motion for summary judgment and

18   GRANTS in part and DENIES in part Ms. Mora-Villalpando's cross motion for summary

19   judgment as described above.  Further, consistent with this ruling, the court ORDERS

20   ICE to perform additional searches for documents responsive to Ms. Mora-Villalpando's

21   Second Request in the EDMS and OPLA databases as described.

22   //

1    3. <u>Third Request</u>

2        In her Third Request, Ms. Mora-Villalpando seeks copies of I-213 forms where

3    Defendants took enforcement action "because of" someone's advocacy.  (FAC ¶ 44.)

4    Ms. Mora-Villalpando argues that ICE's search is inadequate because ICE did not search

5    any database for documents responsive to her Third Request.  (*See* Plf. MSJ at 14, Plf.

6    Reply at 9.)

7        ICE argues that the I-213 forms that Ms. Mora-Villalpando seeks with her Third

8    Request are stored in A-files.  (Def. Resp. at 3.)  ICE further argues that "[b]ecause ERO

9    databases are not capable of conducting work searches, ICE cannot search those

10   databases for the search terms in [Ms. Mora-Villalpando's Third Request]."  (*Id.*)  As a

11   result, ICE maintains that it would have to individually review millions of I-213 forms to

12   locate those forms responsive to Ms. Mora-Villalpando's Third Request.  (*Id.* at 3-4.)

13   Defendants argue, and the court agrees, that requiring them to engage in such an exercise

14   would be unreasonable.  *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35

15   (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003) (finding that requiring "an agency to

16   hand search through millions of documents is not reasonable").

17       However, as noted above, digitized A-files maintained in the EDMS database can

18   be searched and retrieved through a full text-based search of records contained in the

19   digitized A-File.  *See supra* § III.C.2 (citing 76 Fed. Reg. at 34239 & Plf. Reply at 6).

20   Further, Defendants acknowledge that I-213 forms are located within A-Files.  (*See* Def.

21   Resp. at 3 ("Final I-213s are stored in Alien Files ('A-files') that reside with USCIS.")

22   (citing Supp. Fuentes Decl. ¶ 16).)  Thus, for the same reasons that the court concludes

1  that it is unreasonable for ICE to fail to search the EDMS database with respect to Ms.

2  Villalpando's Second Request, the court also concludes that it is unreasonable for ICE to

3  fail to search this database with respect to Ms. Villalpando's Third Request. *See id.*

4      ICE also argues that it cannot respond to Ms. Mora-Villalpando's Third Request

5  because it cannot identify the documents she seeks. (Def. Resp. at 4.)  A FOIA request

6  must "'reasonably describe[]' a class of documents subject to disclosure, as required by 5

7  U.S.C. § 552(a)(3)(A)." *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of*

8  *Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990).  Specifically, ICE argues that it cannot

9  determine which I-213 forms "reflect enforcement action based on one of the listed

10 reasons . . . because it requires the agency to divine intent from words on a page." (Def.

11 Resp. at 4); *see Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (finding a FOIA

12 request too vague when "Defendants would need to engage in quite a bit of guesswork to

13 execute [Plaintiff's] request").

14     Defendants point to the I-213 form that Ms. Mora-Villalpando filed with her

15 motion to illustrate their point.  (*See* Def. Resp. at 5 (citing Plf MSJ, Ex. 1 (Dkt. # 39-1).)

16 The I-213 form notes that the subject of the form "is a member and associate of Migrant

17 Justice, a local immigrant advocacy group." (Plf MSJ, Ex. 1 at 2.)  Defendants argue that

18 although the form contains that notation, Defendants cannot determine if the enforcement

19 action was taken due to the subject's membership in that group. (Def. Resp. at 5.)

20 Indeed, the I-213 form also notes that the subject was arrested in 2015 and convicted for

21 "Driving Under Influence Liquor."  (Plf. MSJ, Ex. 1 at 2.)

22 //

1    Ms. Mora-Villalpando's own I-213 form also illustrates Defendants' point.  (*See*

2    FAC, Ex. 1 (Dkt. # 16-1).)  Ms. Mora-Villalpando's I-213 form states that she "came to

3    the attention of [ICE] after an interview was published in the 'Whatcom Watch' wherein

4    she stated that she is 'undocumented' and that 'many people like me come on a visa and

5    then do not return to their countries when the visa has expired."  (*Id.* at 2 ("not[ing]" that

6    Ms. Mora-Villalpando's "involvement with anti-ICE protests and Latino advocacy

7    programs" and that she had become a "public figure").)  Ms. Mora-Villalpando's form

8    does not reveal if the officer initiated an enforcement action due to her advocacy or

9    because she publicly announced that she is "undocumented," or for some other reason.

10   (*See* Def. Resp. at 5.)

11       Because Ms. Mora-Villalpando's Third Request requires the agency to discern the

12   intent of the enforcement officer from the words on a page, it requires the agency to

13   impermissibly "engage in quite a bit of guesswork."  *Yagman*, 868 F.3d at 1081.  "FOIA

14   does not require an agency to answer questions disguised as a FOIA request . . . or to

15   create . . . opinions in response to an individual's request for information."  *Hudgins v.*

16   *IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985).  "FOIA also does not require agencies to

17   conduct research."  *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 269 (D.D.C.

18   2012).  Thus, Ms. Mora-Villalpando's Third Request does not "reasonably describe[]" a

19   class of documents subject to disclosure.  *Am. Fed'n of Gov't Emps., Local 2782*, 907

20   F.2d at 209.

21       However, the fact that Ms. Mora-Villalpando failed to reasonably describe the

22   records she seeks in her Third Request does not absolve Defendants from any further

1  duty.  "[A]n agency has no right to resist disclosure because the request fails reasonably

2  [to] describe records unless it has first made a good faith attempt to assist the requester in

3  satisfying that requirement."  *Yagman*, 868 F.3d at 1084 (internal quotations and citations

4  omitted) (second alteration in text).  Here, Defendants neither offered nor provided such

5  assistance.  (*See* Plf. Reply at 11.)  Indeed, ICE never asserted in any communication

6  with Ms. Mora-Villalpando prior to ICE's response to her cross motion for summary

7  judgment that her Third Request was insufficiently precise or that it was formulated in a

8  manner that rendered a response impossible.  (*See, e.g.*, Fuentes Decl. ¶ 18, Ex. 2

9  (attaching letter from Defendants stating that they had searched for responsive documents

10  with no mention of any deficiency in the FOIA Request); Answer (Dkt. # 28) (failing to

11  assert or mention any deficiency in Ms. Mora-Villalpando's FOIA Request); Def. MSJ

12  (omitting any discussion of Third Request outside of the Factual Background section).)

13  Because Ms. Mora-Villalpando has not formulated a proper request and Defendants have

14  not fulfilled their obligation to assist her in doing so, the court DENIES both Defendants'

15  motion for summary judgment and Ms. Mora-Villalpando's cross motion concerning her

16  Third Request.

17        In such situations, the Ninth Circuit provides that "[t]he district court may stay

18  proceedings as it deems appropriate to allow the parties to work out any revised request,

19  if possible, and to allow the [the agency] to respond to any revised request as permitted

20  under FOIA or any implementing regulations."  *Yagman*, 868 F.3d at 1084.  Accordingly,

21  the court stays these proceedings for two months with respect to Ms. Mora-Villalpando's

22  Third Request to allow the parties an opportunity to work out a revised Third Request.

1    Assuming the parties are able to do so, the court ORDERS Defendants to conduct a

2    reasonable search for the revised Third Request in the EDMS database.

3                              **IV.    CONCLUSION**

4          Based on the foregoing analysis, the court GRANTS in part and DENIES in part

5    Defendants' motion for summary judgment (Dkt # 35) and GRANTS in part and

6    DENIES in part Ms. Mora-Villalpando's cross motion for summary judgment (Dkt.

7    # 39).  The court GRANTS Defendants' motion to file a supplemental declaration (Dkt.

8    # 49) and DENIES Defendants' surreply request to strike certain portions of Ms.

9    Mora-Villalpando's reply memorandum (Dkt. # 48).  Specifically, the court GRANTS

10   summary judgment to Defendants concerning Ms. Mora-Villalpando's First Request and

11   DISMISSES with prejudice any claim based on that portion of her FOIA request.  With

12   respect to Ms. Mora-Villalpando's Second Request and consistent with its rulings on the

13   parties' cross motions, the court ORDERS ICE to perform additional searches for

14   documents responsive to Ms. Mora-Villalpando's Second Request in the EDMS and

15   OPLA databases as described herein.  With respect to Ms. Mora-Villalpando's Third

16   Request and consistent with its rulings on the parties' cross motions, the court stays these

17   proceedings for two months to allow the parties an opportunity to work out a revised

18   Third Request.  Assuming the parties are able to do so, the court ORDERS Defendants to

19   conduct a reasonable search for the revised Third Request in the EDMS database.

20         The parties shall file a joint status report within two months of the date of this

21   order concerning their progress on the court's rulings herein with the expectation that

22   they shall have completed the tasks ordered herein within that timeframe.  The parties

ORDER - 29

1    shall also provide the court with recommendations on how this case should proceed to

2    resolution at that time.

3         Dated this 26th day of July, 2019.

4

5

6                                           The Honorable James L. Robart
                                            U.S. District Court Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 30